RECEIVED
DEC 21 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| NANCY A. PROCTOR | * | CIVIL ACTION NO. 05-222 |
| VERSUS | * | JUDGE HAIK |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Nancy A. Proctor, born November 22, 1968, filed an application for supplemental security income on December 2, 2002, alleging disability as of January 2, 2002, due to anemia, leg weakness, and blurred vision.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Report from Iberia Vision Center dated April 17, 2001.** Claimant complained of blurred vision and having to hold books close. (Tr. 79). It was noted that she was malingering on examination. The examiner saw no contraindications to work-related physical activities.

**(2) Records from University Medical Center ("UMC") dated February 1, 2002 to August 26, 2002.** On February 1, 2002, claimant complained of frequent urination and of her legs going weak, rendering her unable to walk. (Tr. 83). She also complained of heavy menstrual periods with pain and cramps, heavy clotting, vomiting, and diarrhea during the previous four months. The assessment was anemia. (Tr. 84).

On August 26, 2002, claimant complained of stiffness and achiness in the joints for 10 years and heavy periods. (Tr. 82). She was taking iron supplements and vitamins.

**(3) Consultative Physical Examination by Dr. Harold Heitkamp dated February 21, 2003.** Claimant complained of joint pain, leg weakness, anemia, and some nervousness. (Tr. 86). She also complained of some blurring of vision when she felt weak, chest palpitations, frequent urination, and menorrhagia. She had a 12th

grade education and had never been employed. She had a long history of anemia treated with iron.

On examination, claimant was 5 feet 3 inches tall and weighed 111 pounds. (Tr. 87). Her blood pressure was 122/70, and pulse was 94 per minute.

Claimant's vision was 20/20 bilaterally, and 20/15 bilaterally with glasses. She had some pallor in her conjunctiva of her eyes.

On upper extremity examination, claimant was normal, except for some pallor of her finger nails. Her shoulders had good strength, full range of motion, and no atrophy. She had good hand strength, grasping ability, and dexterity, and normal sensation to pin prick.

On lumbar sacral spine examination, claimant could get up on her toes, take a step, get back on her heels, and squat fully. She had no spasm, and full range of motion. Reflexes were 2 + right and 2 ½ + left in the biceps; 4 + in the patella, and 2 ½ + in the Achilles. Straight leg raising tests were negative.

Hips and knees were within normal limits. Claimant had no atrophy of the lower extremities. The ankles had normal dorsal and plantar flexion.

Dr. Heitkamp's impression was anemia, probably from menorrhagia. (Tr. 88). He opined that claimant had a completely normal physical examination, except for some signs of anemia. He noted that she had some pallor in the conjunctiva and in

her nail beds. He stated that because she had a slight frame, she should probably avoid any heavy lifting over 40 to 50 pounds. Otherwise, he believe that she could work to tolerance. Dr. Heitkamp concluded that claimant could do many types of work, including standing and sitting to tolerance.

**(4) Claimant's Administrative Hearing Testimony.** At the hearing on December 30, 2003, claimant testified that she had never worked. (Tr. 22). She stated that she was living with her mother. She said that she had thought about working, but "the strength is not there."

Regarding activities, claimant testified that she did not drive. She reported that she read books when she was feeling well. (Tr. 23). She stated that she attended church, went shopping, and helped her mother clean the house.

As to complaints, claimant testified that she sometimes could not move either leg when she awakened. (Tr. 24). She stated that it occurred about every three months. (Tr. 25). She testified that her leg problems would interfere with her ability to get and maintain a job.

**(5) Administrative Hearing Testimony of Claimant's Mother, Rebecca R. Proctor.** Claimant's mother testified that claimant had always lived with her. (Tr. 25). She stated that claimant became very weak sometimes and said that she saw "stars." She also reported that claimant would hop, and would lose her balance while

doing so. (Tr. 26). She said that this occurred more than once a month. (Tr. 27).

**(6) The ALJ's findings are entitled to deference**. Claimant argues that: (1) the ALJ erred in finding that she had the capacity to perform medium work, and (2) the ALJ erred in failing to fully develop the record by not using a vocational expert.

As to the first argument, the ALJ determined that claimant had the residual functional capacity to perform the medium work based on the medical evidence. (Tr. 14). In reaching this determination, the ALJ summarized the medical records, including her history of anemia for which she took an iron supplement; her leg weakness from anemia; her bilateral vision of 20/15 and malingering on one eye examination; her full range of motion in the upper and lower extremities on consultative examination, and Dr. Heitkamp's conclusion that she had a normal physical examination except for some signs of anemia in the nail beds and conjunctiva. He also cited Dr. Heitkamp's opinion that claimant should not lift over 50 pounds and could tolerate work activity. The ALJ's opinion that claimant could perform medium work[1] is supported by the evidence.

Claimant argues that she is unable to perform even light work due to her complications from menorrhagia, including strength problems, leg weakness, standing

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting and carrying up to 25 pounds." 20 C.F.R. § 416.967(c).

and walking problems, balancing difficulties, leg cramping or stiffness, and restless leg syndrome. (rec. doc. 9, pp. 5-6). However, these complaints are supported only by the testimony of claimant and her mother, and are not substantiated by objective medical evidence. It is well established that appellant's subjective complaints must be corroborated at least in part by objective medical testimony. *Houston v. Sullivan* 895 F.2d 1012, 1016 (5th Cir. 1989) (citing *Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir.1988)). This is not the case here; thus, the ALJ's finding is entitled to deference.

Next, claimant argues that the ALJ failed to fully develop the record by not calling a vocational expert at the hearing. She first asserts that the ALJ should have more fully developed the record as to whether she had "other functional problems" which interfered with her ability to interact with society and her desire to work. (rec. doc. 9, pp. 8-9). However, there is absolutely no evidence in the record that claimant ever sought treatment for a mental condition, nor is there any medical evidence to support a "functional problem." While claimant suggests that it was the ALJ's burden to develop the record to find such condition, that is not the law of this Circuit.

It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater,* 84 F.3d 726, 728 (5th Cir. 1996). However, this rule typically applies when claimant is not represented by counsel. In this case, the record

reflects that claimant had counsel at the hearing. (Tr. 19).

In any event, even if claimant had not been represented, she must establish that she was prejudiced by the ALJ's failure to develop the record. *Id.*; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). Claimant has not cited any such evidence in this case. Thus, this argument lacks merit.

Finally, claimant argues that the ALJ erred in failing to use a vocational expert in this case because she had non-exertional limitations based on anemia-related fatigue and a "strong suggestion" of an emotional problem. (rec. doc. 9, p. 9). However, the regulations provide that the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform when the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and that claimant either suffers only from exertional impairments *or her non-exertional impairments do not significantly affect his residual functional capacity.* (emphasis added). *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569 and Part 404, Subpart P, Appendix 2, Section 200.00. Here, the ALJ determined that claimant's non-exertional

7

impairments from anemia did not significantly affect her residual functional capacity. This is supported by Dr. Heitkamp's opinion that claimant could "work to tolerance," and "do many types of work, including standing and sitting to tolerance." (Tr. 88). Additionally, there is no evidence in the record to support an emotional problem. Thus, the ALJ's decision not to call a vocational expert is entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR**

THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 21st day of December, 2005, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 12-21-05
BY: gbr
TO: KIH
CMH